# COURT OF APPEALS
# DECISION
# DATED AND FILED

# August 11, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2264-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF580

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

DELMARIO LAMAR SMITH,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed in part, reversed in part and cause remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Delmario Smith appeals his judgment of conviction for, in pertinent part, possession with intent to deliver a schedule I or II narcotic drug (heroin) and possession with intent to deliver a schedule I or II narcotic drug (fentanyl). For the reasons that follow, we conclude that the State failed to present evidence from which a jury, acting reasonably, could find beyond a reasonable doubt that Smith knowingly possessed both heroin and fentanyl. Because this conclusion is dispositive of the other issues raised, we confine our analysis to this issue.

¶2 Accordingly, we reverse Smith's judgment of conviction for possession with intent to deliver a schedule I or II narcotic drug (fentanyl), and that part of the circuit court's postconviction order denying relief in that regard. We remand to the circuit court with instructions to enter a judgment of acquittal on this count. We affirm Smith's judgment of conviction and the postconviction order in all other respects.

## BACKGROUND

¶3 The State initially charged Smith with one count each of operating a motor vehicle while intoxicated, as a second offense; possession with intent to deliver cocaine (more than 5 grams but not more than 15 grams), as a second or subsequent offense; and possession with intent to deliver a schedule I or II narcotic drug (fentanyl), in violation of WIS. STAT. § 961.41(1m)(a) (2019-20),[1] as a second or subsequent offense.

_____

[1] All references to WIS. STAT. § 961.41 are to the 2019-20 version, the version in place at the time Smith was charged. All other references to the Wisconsin Statutes are to the 2023-24 version.

2

¶4 According to the complaint, an officer arrested Smith following a traffic stop for suspected impaired driving. During a search of Smith's person at the Brown County Jail, officers located a "plastic bag" containing 95 individually packaged small bags of a tan rocklike substance. The tan rocklike substance weighed approximately 37.5 grams. Officers also found in the plastic bag a "white powdery substance" weighing approximately 7.6 grams.

¶5 The State incorporated into the complaint a portion of a police report by Narcotics Investigator Kyle Mason of the Brown County Drug Task Force. Mason stated that Smith is known to the task force "as a large-scale heroin dealer and source of supply in the Brown County area." He further attested that based on his "training, experience, and knowledge of this investigation," he believed that Smith "would utilize the early morning hours to travel back from Chicago after resupplying himself with heroin." Mason stated that Smith was "a heroin user himself, so it would not be unusual for him to show symptoms consistent with impairment." In fact, Mason explained, investigators had "observed these behaviors from [Smith] on previous trips to Chicago where he was resupplying with heroin."

¶6 Mason also stated that based on his "training, experience, and knowledge of this investigation," the tan rocklike substance "was consistent in … appearance to that of heroin or fentanyl." Mason tested this substance using the "Fentanyl Reagent Test," which "indicate[d] the presence of Fentanyl." According to Mason, "drug dealers, specifically heroin dealers, will often advertise heroin that is either all fentanyl, or laced with fentanyl, [and] this is sometimes due to the fact that they are unaware of where their product originates from, or they use fentanyl to make their 'heroin' more potent."

¶7 After reviewing the Wisconsin State Crime Laboratory's testing of Smith's blood, the State filed an amended complaint and information, adding one count of operating a motor vehicle with a restricted controlled substance in the blood, as a second offense. The crime lab's results showed the presence of alcohol, cocaine, cocaine metabolites, fentanyl, and fentanyl metabolites in Smith's blood. One day prior to trial, the State filed a second amended information, adding one count of operating a motor vehicle with a prohibited alcohol concentration, as a second offense, and removing the operating a vehicle while under the influence count. The State also added one count of possession with intent to deliver a schedule I or II narcotic drug (heroin), in violation of WIS. STAT. § 961.41(1m)(a), as a second or subsequent offense, based on the crime lab's testing of the tan rocklike substance showing that the substance contained a mixture of heroin and fentanyl.

¶8 On the day of trial, Smith entered a no-contest plea, pursuant to a plea agreement, to operating a motor vehicle with a restricted controlled substance in his blood, as a second offense, and the circuit court accepted the State's motion to dismiss and read in the operating with a prohibited alcohol concentration count.

¶9 Thereafter, the State filed a third amended information containing the remaining three counts to be presented to the jury: possession with intent to deliver a schedule I or II narcotic drug (heroin), contrary to WIS. STAT. § 961.41(1m)(a) (Count 1); possession with intent to deliver cocaine (more than 5 grams but not more than 15 grams) (Count 2); and possession with intent to deliver a schedule I or II narcotic drug (fentanyl), also contrary to § 961.41(1m)(a)

(Count 3).[2] The jury found Smith guilty on Counts 1 and 3, and on Count 2, it found him guilty of the lesser-included offense of possession of cocaine.

¶10    Following sentencing, Smith filed a motion for postconviction relief arguing, in pertinent part, that Counts 1 and 3 were multiplicitous and, to the extent this issue was forfeited, that his trial counsel was ineffective by failing to object to the charges.[3]

¶11    After holding a nonevidentiary hearing on Smith's postconviction motion, the circuit court entered a written decision and order denying the motion on the issues related to Counts 1 and 3. The court concluded that Counts 1 and 3 were not multiplicitous, and, therefore, no evidentiary hearing on Smith's ineffective assistance of counsel claim was required. However, the court stated, while referencing WIS. STAT. § 961.41(1m)(d), that § 961.41(1m)(a) requires that "where heroin is involved, the amount of heroin has to be found by the Jury." Because "the State did not ask the Jury to find the amount of heroin that was involved," the court took the "minimum standard, which is 3 grams or less," and "propose[d]" amending the judgment of conviction on Count 1 to a Class F felony, rather than a Class E felony. However, the court never actually amended the judgment. Smith now appeals.[4]

---

[2] All three of the counts contained in the third amended information were charged as second or subsequent offenses.

[3] Smith raised three additional claims that were resolved by stipulation of the parties. These claims are not addressed by the parties on appeal.

[4] Smith does not challenge his convictions for operating with a restricted controlled substance in his blood, as a second offense, or possession of cocaine, as a second or subsequent offense. Accordingly, we do not address these particular convictions further.

## DISCUSSION

¶12 On appeal, Smith argues that the evidence presented at trial was insufficient for the jury to find the requisite knowledge elements to support his conviction on Count 3.[5] In the alternative, Smith contends he is nonetheless entitled to relief because Counts 1 and 3 are multiplicitous. On these grounds, Smith argues that his judgment of conviction for Count 1 or 3 should be vacated, and, upon remittitur, a judgment of acquittal should be entered on that count.[6]

¶13 Separately, Smith argues that to the extent we do not find his foregoing challenges persuasive,[7] we should order that the judgment of conviction for Count 1 be amended to a Class F Felony because the jury failed to determine the weight of the heroin.

¶14 Because we agree that the evidence presented at the trial was insufficient for a reasonable jury to find beyond a reasonable doubt that Smith knowingly possessed both heroin and fentanyl, we need not address Smith's remaining challenges.

---

[5] We note that Smith, at times, appears to argue that the evidence presented at trial was insufficient to prove the requisite knowledge requirements for both Counts 1 and 3. However, he also argues, more specifically, that the evidence was insufficient to prove that he knew that he possessed fentanyl. Indeed, Smith does not ask this court to reverse both of his convictions for Counts 1 and 3. Therefore, we interpret Smith's sufficiency of the evidence challenge to pertain to Count 3 only.

[6] Relatedly, Smith argues that to the extent he forfeited his multiplicity challenge, his defense counsel was ineffective by failing to object to the double jeopardy violation. On this basis, Smith asks this court to remand for an evidentiary hearing pursuant to *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[7] According to Smith, we need not address this issue unless we determine that "both convictions [are] valid."

¶15 Turning to the merits of Smith's sufficiency of the evidence challenge, Smith contends that, on Count 1, the State "presented no evidence that [he] knew and intended to possess or knew and intended to distribute both heroin and fentanyl." According to Smith, "there was no evidence at trial that [he] knew or should have known that the tan rocklike substance he possessed contained both heroin and fentanyl." Smith further contends that "[a] lay person could not be expected to know the specific chemical compounds making up the tan rocklike substance—and most importantly, that it contained *two* controlled substances."

¶16 We review the sufficiency of the evidence to support a criminal conviction by comparison to the instructions actually given to the jury, so long as those instructions conform to the statutory requirements of the charged offense. *State v. Beamon*, 2013 WI 47, ¶22, 347 Wis. 2d 559, 830 N.W.2d 681. We will sustain the verdict "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). Under this standard, we are required to search the record for "facts that support upholding the jury's decision to convict." *State v. Hayes*, 2004 WI 80, ¶57, 273 Wis. 2d 1, 681 N.W.2d 203.

¶17 We begin by addressing the proper elements for Count 3 that the State needed to prove at trial. According to the State, "to satisfy the knowledge requirement, 'well-established law in this state only requires proof that the defendant knew the substances he possessed were controlled or illegal. Proof of knowledge of the exact nature or particular controlled substance possessed is not required.'" *See State v. Sartin*, 200 Wis. 2d 47, 55, 546 N.W.2d 449 (1996); *see also* WIS JI–CRIMINAL 6000. Therefore, argues the State, it did not need to prove

7

beyond a reasonable doubt that Smith knew the tan rocklike substance contained fentanyl. According to the State, it only needed to prove, for the knowledge element, that the tan rocklike substance "contained controlled substances."

¶18 Citing **Poellinger** and other authority, Smith disputes the applicability of **Sartin** to this case. He argues that nothing "in **Sartin**'s holding that the State need not prove a defendant knew the exact name of the controlled substance supports the State's proposition that a defendant can be convicted of possessing with intent to deliver *multiple* controlled substances without proof of knowledge and intent of possessing multiple controlled substances."

¶19 The circuit court instructed the jury on Counts 1 and 3 using the pattern jury instruction WIS JI—CRIMINAL 6035. These instructions provided that to convict Smith on Counts 1 and 3, the State needed to prove that Smith knew or believed that the tan rocklike substance contained both heroin and fentanyl, *specifically*, not just that it contained controlled substances, *generally*. The jury instruction for Count 1 provided that the State needed to prove that Smith "knew or believed that the substance was Heroin, a controlled substance. A controlled substance is a substance the possession of which is prohibited by law." The jury instruction for Count 3 included the same language, save for the term "Fentanyl" in place of "Heroin." Contrary to the State's argument, the jury was instructed that in order to find Smith guilty of the charged offenses, Smith's knowledge of the exact nature of the particular controlled substance he was charged with possessing under each count was required. *Cf. Sartin*, 200 Wis. 2d at 55.

¶20 In fact, the relevant jury instructions actually provided to the jury were consistent with those the State submitted pretrial. The State never proposed using a jury instruction that was consistent with its interpretation of **Sartin** on

appeal, nor did the State object at trial to the instructions actually provided. *See* WIS. STAT. § 805.13(3) ("Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."). Significantly, the State does not now argue on appeal that the circuit court misstated the law or improperly instructed the jury.

¶21 Accordingly, we review the sufficiency of the evidence to support Smith's criminal conviction on Count 3 by comparison to the instructions actually given to the jury, not the standards now suggested by the State. *See Beamon*, 347 Wis. 2d 559, ¶22. That is, the question on appeal is whether there were sufficient facts to establish Smith's knowledge of the specific character of the tan rocklike substance in his possession. *See State v. Chentis*, 2022 WI App 4, ¶13, 400 Wis. 2d 441, 969 N.W.2d 482 (2021). "[T]he awareness of the defendant of the presence of the narcotic, not scientific measurement and detection, is the ultimate test of the known possession of a narcotic." *Id.*, ¶11 (citation omitted).

¶22 We now turn to the evidence presented at trial that is relevant to Smith's conviction on Count 3. A correctional officer at the jail testified that staff were moving Smith to a "detox cell due to use of alcohol and suspicion of drug use" following his arrest. The officer testified that Smith was "very hyper," had "erratic movements," and seemed "more agitated than a normal state." The State introduced evidence from the crime lab showing that Smith had the presence of fentanyl and cocaine in his system at the time of his arrest.

¶23 Narcotics Investigator Mason testified that he had been working as a narcotics investigator since 2017. Mason attested that he had "training and experience with respect to the identification and detection of controlled substances," including cocaine, heroin, and fentanyl. Mason also testified that he

had training and experience with "conducting tests" of substances for the presence of cocaine, heroin, and fentanyl. Mason stated that from the course of his duties, he could visually recognize cocaine, heroin, and fentanyl. Mason explained that cocaine is "typically more white than fentanyl," that the "Mexican brown or tan variety of heroin" is the most common type of heroin in the Green Bay area, and that "many times there are multiple drugs … in one substance." According to Mason, it had "become more common for [him] to see heroin laced with fentanyl."

¶24 Mason further testified that he tested the substances found on Smith's person. According to Mason, patrol officers sometimes misidentify drugs or are unaware that substances can contain multiple drugs. In his investigation in this case, Mason tested the tan rocklike substance using the fentanyl regent test and received a positive result for the presence of fentanyl. Mason also stated that, based on his experience and observations, the tan rocklike substance was intended for distribution, not Smith's personal use. Mason stated that it was significant to him that Smith had fentanyl and cocaine in his system.[8]

¶25 According to the State, this evidence was sufficient for the jury to find beyond a reasonable doubt that Smith "knew exactly what the substances were that he intended to deliver" because "[t]he jury heard that it had become common for heroin in the Brown County area to be laced with fentanyl"; "Smith plainly used some of the substance after he himself purchased it, so of course he would know what it contained"; and Smith "would have to know what the substances were (or believed he knew what they were) to be able to appropriately

---

[8] Smith did not testify at trial.

package them for sale and to subsequently sell them and know what to charge for them."

¶26     While this is a close case, we conclude that the evidence presented at trial, even with reasonable inferences drawn from that evidence, was insufficient to prove beyond a reasonable doubt that Smith knew or believed that the tan rocklike substance contained both heroin and fentanyl.

¶27     As an initial matter, the State does not contend that there was any direct evidence presented to the jury that Smith knew he was delivering and intending to distribute both heroin and fentanyl.  Nor does the State disagree with Smith's assertion that under the circumstances present here, it cannot be said that the presence of the fentanyl in the tan rocklike substance was reflected in "such a form as reasonably imputed knowledge" to Smith that it was fentanyl.  *See Kabat v. State*, 76 Wis. 2d 224, 228, 251 N.W.2d 38 (1977).  In other words, the State concedes by omission that the tan rocklike substance was insufficient, by itself, to impute to Smith knowledge that the substance contained fentanyl.  *See id.* at 229 (concluding that because a lay person could not tell that a burnt ash material still contained the ingredients of a controlled substance, "[u]nder the circumstances of the case it cannot be said that the presence of the narcotic was reflected in such a form as reasonably imputed knowledge to [the defendant] that it was marijuana").

¶28     Indeed, there was no evidence presented demonstrating how, if at all, heroin is visibly distinguishable from fentanyl, and the first officer to test the tan rocklike substance did not test it for heroin or fentanyl.  Mason even acknowledged during his testimony that some officers occasionally misidentify drugs or are unaware that substances can contain multiple drugs.  *See id.*

¶29   Accordingly, the question becomes whether there was other evidence presented to the jury that would support a reasonable inference that Smith knew or believed that he possessed both heroin and fentanyl. *See Poellinger*, 153 Wis. 2d at 508-09; *Chentis*, 400 Wis. 2d 441, ¶¶2, 13.  The jury did not hear evidence concerning the separate weights of the heroin and fentanyl.   Furthermore, no evidence was presented demonstrating that the substance was packaged for sale, either by Smith or another individual, as both heroin and fentanyl such that the jury could infer that Smith knew that the substance contained both substances.

¶30   We reject the State's assertion that the evidence at trial "plainly" demonstrated that Smith used some of the tan rocklike substance, given the presence of fentanyl and cocaine in his system.  As Smith responds, no heroin was found in his system.  Because the tan rocklike substance also contained heroin, it is not reasonable to infer from this evidence that Smith used the substance that formed the basis for the charges in Counts 1 and 3 and, therefore, knew that the substance contained both heroin and fentanyl.

¶31   To the extent the State is attempting to rely on evidence from Mason's police report that was incorporated into the complaint to support Smith's convictions, we agree with Smith that this evidence was not presented at trial and is, therefore, not properly before this court on the sufficiency of the evidence challenge.  For example, Mason did not testify to the fact that, based on his training and experience, "drug dealers, specifically heroin dealers, will often advertise heroin that is either all fentanyl … or they use fentanyl to make their 'heroin' more potent."  Nor did Mason testify to his knowledge of how drug traffickers package and sell heroin laced with fentanyl.  Significantly, Mason also did not testify that Smith was "a large-scale heroin dealer and source of supply in

the Brown County area." As Smith argues, "the parties agreed that information related to other investigations concerning Smith was not admissible at trial if Smith did not testify," which he did not.

¶32 Given the foregoing, we conclude that the State failed to present evidence from which a jury, acting reasonably, could find beyond a reasonable doubt that Smith knowingly possessed both heroin and fentanyl. The State therefore failed to meet its burden, as a matter of law. Accordingly, we reverse Smith's judgment of conviction on Count 3, and we remand to the circuit court with instructions that a judgment of acquittal be entered on that count. Given this conclusion, we need not address the remaining issues raised by Smith on appeal.

*By the Court.*—Judgment and order affirmed in part, reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.